IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

*

RUMALDO ERNESTO RAMOS-LOPEZ,      *

    Plaintiff,                *

    v.                    *        Civ. No. 1:26-cv-01175-PX

PAMELA BONDI *et al*.,          *

    Defendants.          *

***

**MEMORANDUM OPINION**

## I.   Introduction

Plaintiff Rumaldo Ernesto Ramos-Lopez ("Ramos-Lopez"), a non-citizen previously granted Special Immigration Juvenile Status ("SIJS") and deferred action, was summarily removed to Guatemala without process. He moves for injunctive relief, asking the Court to order that the Government[1] facilitate his return to the United States. ECF No. 3. The Government has responded and separately moved to transfer this case to either the Middle District of Pennsylvania or the Western District of Louisiana. ECF No. 18. The matters are fully briefed, and the Court held a hearing on April 20, 2026. ECF Nos. 3, 18, 21, 24. For the reasons discussed below, the

---

[1] The Court refers to Defendants Todd Blanche, U.S. Attorney General; Markwayne Mullin, Secretary, U.S. Department of Homeland Security ("DHS"); David Venturella, Acting Director, U.S. Immigration and Customs Enforcement ("ICE"); Marcos Charles, Acting Executive Associate Director, ICE Enforcement and Removal Operations; Vernon Liggins, Acting Field Office Director of ICE's Baltimore Field Office; Marco Rubio, U.S. Secretary of State; and Bryan Patterson, Warden, Pine Prairie ICE Processing Center, collectively as "the Government." Further, pursuant to Federal Rule of Civil Procedure 25(d), former U.S. Attorney General, Pamela Bondi, is replaced with current U.S. Attorney General Todd Blanche; former DHS Secretary, Kristi Noem, is replaced with current Secretary, Markwayne Mullin; and former Acting Director of ICE, Todd L. Lyons, is replaced with current Acting Director, David Venturella. The Clerk is directed to update the docket accordingly.

1

Court grants Plaintiff's Motion for Preliminary Injunction and denies Defendants' Motion to Transfer.

## II.   Background

In 2017, ten-year-old Ramos-Lopez, a native and citizen of Guatemala, crossed the border into the United States to escape years of physical and emotional abuse at the hands of his father. ECF No. 1 ¶¶ 22–23.  Border patrol initially detained him, his siblings, and mother, but quickly released them on their own recognizance with a Notice to Appear in Immigration Court for removal proceedings.  *Id.* ¶ 24.  The family settled in Maryland.  *Id*. ¶ 25.  On November 20, 2019, the family missed their preliminary master calendar hearing at the Baltimore Immigration Court; consequently, the Immigration Judge ("IJ") issued an *in absentia* order of removal for Ramos-Lopez and his family.  *Id*. ¶¶ 26–27.  Ramos-Lopez was 12 at the time.  *Id*.

In 2023, Ramos-Lopez's mother successfully secured sole legal and physical custody of Ramos-Lopez through a state court order, as well as a predicate order rendering him eligible to apply for SIJS.  ECF No. 1 ¶¶ 29–31.  Thereafter, Ramos-Lopez petitioned the United States Customs and Immigration Service ("USCIS") for SIJS.  *Id.* ¶ 32.  In November 2023, USCIS approved his SIJS application, granting him SIJS and deferred action with work authorization.  *Id*. ¶¶ 33–35; ECF Nos. 1-4 & 1-5; 8 C.F.R. § 274a.12(c)(14) (permitting work authorization for deferred action recipients).  Since settling in Maryland, Ramos-Lopez attended school, became lawfully employed, and has never been involved in criminal activity.  ECF No. 1 ¶¶ 25, 37.

On February 2, 2026, Immigration and Customs Enforcement ("ICE" ) officers stopped the vehicle Ramos-Lopez was driving.  ECF No. 1 ¶ 37.  The officers were looking for someone other than him.  *Id*.  But because of the 2017 *in absentia* removal order, ICE agents arrested Ramos-

Lopez, detained him, and within the week removed him to Guatemala.  *Id*. ¶¶ 38–40; ECF No. 18 at 6.

On March 22, 2026, Ramos-Lopez filed a verified Complaint and separate motion for preliminary junction.  ECF Nos. 1 & 3.  The Complaint alleges that Defendants' removal of Ramos-Lopez effectively revoked his SIJS, stripping him of the substantive protections conferred through SIJS and deferred action, and thus constitutes arbitrary and capricious government action in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2) (Count I); violates the nondiscretionary SIJS provisions of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1227(c) & 1155, and 8 C.F.R. § 205.2 (Count II); and amounts to a due process violation (Counts III & IV).  ECF No. 1 ¶¶ 43–76.  In the motion for preliminary injunctive relief, Ramos-Lopez urges the Court to order that the Government facilitate his return to Maryland to restore him to the *status quo ante* pending final adjudication on the merits.  ECF No. 3 at 2.

The Government responds that this Court lacks jurisdiction to review the claims pursuant to 8 U.S.C. § 1252(g), or alternatively that the Court should transfer the case to either the Western District of Pennsylvania or Eastern District of Louisiana, the two locations in which ICE temporarily detained Ramos-Lopez in advance of his removal.  ECF No. 18 at 4; *id*. at 9–16.  Last, the Government argues that the Court must deny injunctive relief because Ramos-Lopez cannot demonstrate success on the merits of any one claim.  *Id*. at 16–19.

Because the claims turn centrally on the substantive protections that SIJS and deferred action confer on Ramos-Lopez, the Court first summarizes the applicable statutory and regulatory framework and next turns to the jurisdictional and venue challenges.

III.    **SIJS and Deferred Action**

3

Over twenty-five years ago, Congress created SIJS to offer safe harbor in the United States for abused, neglected, and abandoned children. *See* 8 U.S.C. § 1101(a)(27)(J); 8 U.S.C. § 1255(h). Notably, Congress aimed to protect those who qualify for SIJS from return to their country of origin by giving SIJS recipients the chance to adjust their status to that of a "lawful permanent resident [] with [the] possibility of becoming citizens of the United States in the future." Special Immigrant Status, 58 Fed. Reg. 42843-01, 42844 (Aug. 12, 1993). *See also* Immigration Act of 1990, Pub. L. No. 101-649, § 153, 104 Stat. 4978 (Nov. 29, 1990) (amending various sections of the INA); *Osorio-Martinez v. Att'y Gen. United States of Am.*, 893 F.3d 153, 163 (3d Cir. 2018) ("Congress established SIJ status in 1990 in order to 'protect abused, neglected or abandoned children who, with their families, illegally entered the United States.'") (quoting *Yeboah v. U.S. Dep't of Justice*, 345 F.3d 216, 221 (3d Cir. 2003)).

To obtain SIJS, the child must meet several requirements. Chief among them, he must be "physically present in the United States." 8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 204.11(b)(3). A state court must also formally find that the juvenile is (1) dependent on, or will be placed in the custody of, the state or someone appointed by the state; (2) is unable to reunify with one or more parents in his native country due to abuse, neglect, or abandonment; and (3) that it would not be in the child's best interest to be returned to his country of origin. 8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 204.11(c). After "satisfying [this] set of rigorous, congressionally-defined eligibility criteria," the child can apply to the USCIS for SIJS protection. *Joshua M. v. Barr*, 439 F. Supp. 3d 632, 657 (E.D. Va. 2020) (citation omitted). If accorded SIJS, the applicant effectively becomes "'a ward of the United States with the approval of both state and federal authorities.'" *Id*. (quoting *Osorio-Martinez*, 893 F.3d at 168).

To facilitate a SIJS recipient's adjustment to Legal Permanent Resident ("LPR"), Congress also mandated that such status is "a form of parole" so that the recipient may adjust his status regardless of how he originally entered the United States. *Murillo-Chavez v. Bondi*, 128 F.4th 1076, 1085 (9th Cir. 2025); 8 U.S.C. § 1255(h)(1). This SIJS parole "is indeed crucial, for SIJ[S] beneficiaries because SIJ status can only be maintained if the recipient [remains] '*present* in the United States.'" *Alfaro Herrera v. Baltazar*, No. 1:25-CV-04014-CNS, 2026 WL 91470, at *2 (D. Colo. Jan. 13, 2026) (quoting 8 U.S.C. § 1101(a)(27)(J)) (emphasis in original). Additionally, Congress ensured that several grounds for a noncitizen's inadmissibility "shall not apply" to SIJS recipients. *See* 8 U.S.C. § 1255(h)(2) (stating that the grounds of inadmissibility found at "paragraphs (4), (5)(A), (6)(A), (6)(C), (6)(D), (7)(A), and (9)(B) of section 1182(a) . . . shall not apply"). This includes inadmissibility based on the lack of "valid entry document[s]," *id.* § 1182(a)(7)(A)(i)(I), the very ground on which Ramos-Lopez's *in absentia* removal order was based. *Cf. Joshua M.*, 439 F. Supp. 3d at 659.

Presently, adjusting to LPR status also takes time. For one, an SIJS recipient must obtain an EB-4 immigrant visa for which only limited numbers are given out each year.[2] *See Special Immigrant Juveniles: Green Card Based on SIJ Classification (Form 1-485)*, U.S. CITIZENSHIP & IMM. SERVS., https://www.uscis.gov/working-in-US/eb4/SIJ (last visited June 16, 2026). When a juvenile applies for SIJS, he is given a "priority date," or a date that governs when he may apply for LPR adjustment. *Alfaro Herrera*, 2026 WL 91470, at *2 (citing *Casa Libre/Freedom House v. Mayorkas*, 637 F. Supp. 3d 805, 810 (C.D. Cal. 2022)). When SIJS was first instituted, sufficient visas were available so that SIJS recipients could immediately apply for LPR adjustment. *See* WILLIAM A. KANDEL ET AL., CONG. RSCH. SERV., R47164, U.S. Employment-Based

---

[2] Approximately 10,000 EB-4 visas are issued annually to the special immigrant category, including SIJS recipients. *See* RUTH ELLAN WASEM, CONG. RSCH. SERV., R43703, Special Immigrant Juveniles: In Brief 6 (2014).

Immigration Policy 3 (2024).  But over time, the number of SIJS applicants outpaced the number of available visas, resulting in substantial delays.  *Xol-Maas v. Francis*, No. 26-CV-25-JAV, 2026 WL 457005, at *2 (S.D.N.Y. Feb. 18, 2026) ("As of March 2025, more than 150,000 individuals had received SIJS classification but were unable to apply for adjustment of status due to a dearth of visas.") (citing *A.C.R. v. Noem,* 809 F. Supp. 3d 103, 110 (E.D.N.Y. 2025), *reconsideration denied,* No. 25-CV-3962 (EK)(TAM), 2026 WL 102611 (E.D.N.Y. Jan. 14, 2026)).  Accordingly, in 2022, USCIS promulgated a written policy which directs that SIJS applicants simultaneously receive consideration for deferred action, in recognition that "the protection that Congress intended to afford SIJs through adjustment of status is often delayed for years, leaving this especially vulnerable population in limbo."  USCIS*, Policy Alert: Special Immigrant Juvenile Classification and Deferred Action*, PA-2022-10, (March 7, 2022); *A.C.R.,* 809 F. Supp. 3d. at 110–111.[3]  Deferred action is a broadly applied mechanism whereby the Department of Homeland Security ("DHS") deprioritizes certain classes of non-citizens for removal in an act of prosecutorial discretion.  *Casa de Maryland v. Dep't of Homeland Security*, 924 F.3d 684, 691–92 (4th Cir. 2018).  Pertinent here, deferred action has been broadly awarded to SIJS recipients for four-year terms so that the recipients may be physically present in the United States when their priority dates issue, thus facilitating their adjustment to LPR.  *Xol-Maas*, 2026 WL 457005, at *2.

SIJS also comes with a wide array of procedural protections making it difficult for the Government to strip a recipient of SIJS.  *See* 8 C.F.R. § 205.2(a)–(d).  First, the Government must provide the SIJS recipient with written notice of "good and sufficient cause" for revocation; and next offer the recipient the opportunity to present evidence opposing revocation.  8 U.S.C. § 1155;

---

[3] On June 6, 2025, USCIS issued a new policy rescinding automatic deferred action consideration for SIJS recipients. The policy shift is the subject of pending litigation in the Eastern District of New York.  *See A.C.R.*, 809 F. Supp. 3d at 129.  The *A.C.R.* Court, however, granted the plaintiffs' motion for preliminary injunction and stayed the 2025 policy pursuant to Section 705 of the Administrative Procedure Act.  *Id.*

8 C.F.R. § 205.2. *See also Osorio-Martinez*, 893 F.3d at 163–64 (citing 8 U.S.C. § 1155; 8 C.F.R. § 205.2). A revocation determination must also be memorialized in a written decision which the SIJS recipient may appeal. 8 C.F.R. § 205.2(d). These significant procedural protections "bespeak [the] substantial legal relationship between [the SIJS recipient] and the United States." *Osorio-Martinez*, 893 F.3d at 174. *See also Rodriguez v. Perry*, 747 F. Supp. 3d 911, 918 (E.D. Va. 2024). Because SIJS recipients are "a hair's breadth from being able to adjust their status," they are thus "entitled to broad constitutional protections" not customarily accorded to inadmissible noncitizens. *Osorio-Martinez,* 893 F.3d at 174 (citation omitted).

In 2023, Ramos-Lopez received SIJS and a four-year term of deferred action. ECF No. 1-4. Nonetheless, on February 2, 2026, ICE agents summarily detained Ramos-Lopez and, without any further process, removed him to Guatemala eight days later. ECF No. 1 ¶¶ 37–39. He now urges the Court to grant the requested injunctive relief so that he may be restored to his prior SIJS-deferred action status or "the last uncontested status between the parties which preceded the controversy." *See League of Women Voters of N. Carolina v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014) (citation omitted). *See also Nken v. Holder,* 556 U.S. 418, 435 (2009) (a wrongly removed noncitizen may be "afforded effective relief by facilitation of their return, along with restoration of the immigration status they had upon removal."); *Abrego Garcia v. Noem*, No. 8:25-CV-00951-PX, 2025 WL 2062203, at *7 (D. Md. July 23, 2025).

## IV.    Jurisdiction

The Court must first resolve whether it maintains the power to hear this case. The Government solely contends that 8 U.S.C. § 1252(g) strips the Court of its jurisdiction. ECF No. 18 at 9–10. Section 1252(g) bars the Court from reaching claims "arising from" the Attorney General's decision to "commence proceedings, adjudicate cases, or execute removal orders"

against any [noncitizen]" under this chapter.  *See Reno v. Am.-Arab Anti-Discrimination Comm.,* 525 U.S. 471, 477–478 (1999) ("*AAADC*").  However, this statutory bar must be read narrowly, *id*. at 482, applying only where the Attorney General has exercised "*lawful* discretion" to commence removal proceedings, adjudicate those cases, and execute orders of removal.  *Abrego Garcia v. Noem, et al.,* No. 25-1345, 2025 WL 1021113, at *2 (4th Cir. Apr. 7, 2025) (Thacker, J. concurring) (emphasis added) (citing *AAADC*, 525 U.S. at 482).

When considering the scope of § 1252(g), Ramos-Lopez' claims fall well outside of it. Ramos-Lopez, at bottom, does not challenge the execution of the *in absentia* removal order, but rather its effect: that his removal from the United States without process amounts to an illegal recission of his SIJS and deferred action status in violation of the INA and due process.  ECF No. 3-1 at 10–13.  For this reason, the Court concludes that the claims fall outside the narrow class of challenges for which § 1252(g) applies.

The Court next turns to the propriety of venue in this District.

## V.    Venue

The Government separately argues that if the Court retains jurisdiction, it should transfer the case to either the Middle District of Pennsylvania or the Western District of Louisiana where Ramos-Lopez had been briefly held before his removal to Guatemala.  ECF No. 18 at 11–16.  This action was brought against multiple federal officers in their official capacities.  ECF No. 1 at 3–4. Accordingly, pursuant to 28 U.S.C. § 1391(e)(1), the action may "be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, . . . or (C) the plaintiff resides[.]"  28 U.S.C.A. § 1391(e)(1).

Section 1404(a) further provides that the Court "may transfer any civil action to any other district or division where it might have been brought[.]"  28 U.S.C. § 1404(a).  Questions of

transfer are discretionary and based on an "'individualized, case-by-case consideration of convenience and fairness.'" *United States of America ex rel. Salomon v. Wolff*, 268 F. Supp. 3d 770, 774 (D. Md. 2017) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). The Court must first determine whether the action could have been brought in the requested district. *Mamani v. Bustamante*, 547 F. Supp. 2d 465, 469–70 (D. Md. 2008). If yes, the Court next considers several non-exclusive factors to determine whether transfer is warranted, such as "(1) the weight accorded the plaintiff's choice of venue, (2) witness convenience and access, (3) convenience of the parties, and (4) the interest of justice." *Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 617 (D. Md. 2002) (citing *Bd. of Trs., Sheet Metal Workers Nat. Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1256–52 (E.D. Va. 1988)).

The parties do not dispute that the action could be brought here as well as either the Middle District of Pennsylvania or the Western District of Louisiana. ECF No. 18 at 11; ECF No. 21 at 1–3. Nonetheless, the remaining factors, on balance, counsel against transfer. First, as to a plaintiff's choice of venue, "'[u]nless the balance [of factors] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" *Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). This is particularly true where "'the chosen forum is the plaintiff's home or bears a substantial relation to the cause of action.'" *ComScore, Inc. v. Integral Ad Sci., Inc.*, 924 F. Supp. 2d 677, 682 (E.D. Va. 2013) (quoting *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 995 (E.D. Va. 2011)). As the venue where Ramos-Lopez lives, chooses to remain, *Martinez v. Bynum*, 461 U.S. 321, 330–31 (1983), and where he perfected his right to SIJS relief, his choice of forum cuts decidedly against transfer.

Second, while witness convenience is "[p]erhaps the most important factor to be considered," *Cronos Containers, Ltd. v. Amazon Lines, Ltd.*, 121 F. Supp. 2d 461, 466 (D. Md. 2000), the Government has not identified specific witnesses as necessary to adjudicate the merits of the case, or that any witnesses would particularly "suffer if the case were heard in the plaintiff's chosen forum." *Dow v. Jones*, 232 F. Supp. 2d 491, 499 (D. Md. 2002). Although the Government claims that "key" witnesses are in the Middle District of Pennsylvania or the Western District of Louisiana, the case principally turns on the legal question of whether removal stripped Ramos-Lopez of SIJS-deferred action without adequate process. *See* ECF No. 18 at 14. To the extent witnesses may need to be called from Pennsylvania or Louisiana, this relatively minor travel inconvenience does not override Ramos-Lopez's choice of forum.

Third, the convenience of the parties "is [a] chiefly operative [factor] in cases where the plaintiff chooses a forum away from [either party's] home." *Bd. Trs., Sheet Metal Workers Nat. Fund*, 702 F. Supp. at 1259. But where, as here, the plaintiff resides in the forum state, the matters at hand focus on questions of law, and the Defendants are the United States and its Executive departments, any relative inconvenience that arises from denying the transfer request pales in comparison to honoring the plaintiff's chosen forum. *MedServ Int'l, Inc. v. Rooney*, No. 8:05-CV-3173-AW, 2006 WL 8457082, at *3 (D. Md. Feb. 7, 2006) (holding that the convenience of the parties factor did "not militate persuasively in favor of transfer" where plaintiff chose to file in his district of residence).

Last, the interests-of-justice inquiry encompasses all other relevant considerations apart from witness and party convenience. *See Topiwala v. Wessell*, No. 1:11-CV-0543-WDQ, 2012 WL 122411, at *8 (D. Md. Jan. 12, 2012) (citing *Cross v. Fleet Reserve Ass'n Pension Plan*, 383 F.Supp.2d 852, 857 (D.Md.2005)). This includes whether the plaintiff's chosen venue maintains

sufficient familiarity with the underlying substantive law and whether any local interests would favor resolution of the issues in the place they occurred. *See id.*; *see also Maiden Biosciences, Inc. v. MPM Med., Inc.*, No. 1:17-CV-3029-RDB, 2018 WL 2416071, at *5 (D. Md. May 29, 2018). Where, as here, the claims center on questions of federal constitutional and statutory interpretation, no particular forum is any more or less "familiar" or "interested" in the outcome than any other. Thus, the interests-of-justice factor also does not favor transferring the case.

For these reasons, the Government's request to transfer the case is denied. The Court next turns to the merits of the motion for preliminary injunctive relief.

## VI.     Preliminary Injunction

Ramos-Lopez asks that this Court order the Government to restore him to the status quo ante so that he may retain his SIJS and deferred action status pending the outcome of this case. ECF No. 3 at 2. An injunction is "an extraordinary remedy," that "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 22 (2008) (citation omitted). To succeed, the movant must demonstrate all four well-known *Winter* factors: (1) the likelihood of success on the merits of at least one claim; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tip in his favor; and (4) the requested injunctive relief is in the public interest. *Id.* at 20. *See also Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, 172 F.4th 361, 371 (4th Cir. 2026) (en banc) (vacating a preliminary injunction based on the rejection of a single factor). When the Government is the opposing party to a motion for a preliminary injunction, the third and fourth factors merge. *Nken*, 556 U.S. at 435. The Court considers each factor below.

### A.     Likelihood of Success on the Merits

To prevail, Ramos-Lopez need only demonstrate a likelihood of success as to one claim. *See Mayor & City Council of Baltimore v. Azar*, 392 F. Supp. 3d 602, 613 (D. Md. 2019). He succeeds on two.

Counts II and III aver that the Government's summary removal of Ramos-Lopez violated 8 U.S.C. §§ 1227(c) & 1155 and 8 C.F.R. § 205.2 and his Fifth Amendment right to due process respectively. ECF No. 1 ¶¶ 52–69. Although Ramos-Lopez cannot legally sustain the statutory violation,[4] he has established likelihood of success on the merits that his removal violated 8 C.F.R. § 205.2 and the procedural safeguards to which he is entitled to before he can be stripped of his SIJS protections.

Arguably, 8 C.F.R. § 205.2 attaches some of the most robust procedural safeguards accorded to noncitizens related to protected immigration status. An approved SIJS petition cannot be revoked absent a written showing of good cause, a hearing where the recipient may introduce evidence in opposition, issuance of a written decision, and the right to appeal an adverse determination. 8 C.F.R. § 205.2(a)–(d); 8 U.S.C. § 1155. Plainly, the Government's summary removal of Ramos-Lopez to Guatemala stripped him of the benefits of SIJS without any such protections. This is so because once the Government removed him from the United States, his SIJS evaporated.

Indeed, one cannot *be* an SIJS recipient unless he is "present in the United States." 8 U.S.C. § 1101(a)(27)(J). Further, once removed from the United States, an SIJS recipient cannot obtain the primary protection afforded to SIJS recipients: adjustment of status to that of LPR. Because an SIJS recipient can only receive permanent residence status *if he is on United States soil*,

---

[4] The Court disagrees that his removal violates 8 U.S.C. § 1227(c). Ramos-Lopez had been charged as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i), not § 1227. ECF No. 21 at 10; *Joshua M.*, 439 F. Supp. 3d at 663.

summary expulsion from the United States revokes that benefit. *See* U.S. Dep't of State, Foreign Affairs Manual (FAM), 9 AFM 502.5-7(C) (U) ("The Department of State and Related Agencies Appropriations Act, 1998 changed the definition of a Special Immigrant Juvenile (SIJ) and divested consular officers of the authority to issue SIJ visas. . . . SIJ has been an adjustment-only category as reflected in 22 C.F.R. § 42.11. Under no circumstances should [a consular officer] issue an SIJ visa.") (cleaned up). Thus, Ramos-Lopez must be present in the United States to adjust his status to LPR. And as 8 C.F.R. § 205.2 makes plain, the Government cannot summarily strip Ramos-Lopez of SIJS, as it did here. Accordingly, Ramos-Lopez is likely to succeed in showing that his removal violated 8 C.F.R. § 205.2.[5]

For the same reason*,* Ramos-Lopez is likely to prevail on his due process claim in Count III. Ramos-Lopez received none of the procedural protections to which he is entitled to under 8 C.F.R. § 205.2. *See Osorio-Martinez*, 893 F.3d at 163–64 (citing 8 U.S.C. § 1155; 8 C.F.R. § 205.2). *See also* USCIS Policy Manual, vol. 7, pt. F, ch. 7.C.2. These procedural safeguards are mandatory and reflect the importance of the protection in Ramos-Lopez's case from removal to Guatemala that SIJS-deferred action confers. Accordingly, the Government's summary removal without any notice and an opportunity to be heard likely amounts to a due process violation under *Mathews v. Eldridge,* 424 U.S. 319 (1976).

---

[5] Although Ramos-Lopez does not aver the Government's circumvention of 8 C.F.R. § 205.2 violates the doctrine announced in *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), plainly the Government did violate *Accardi*. "[A]n agency's failure to afford an individual procedural safeguards required under its own regulations may result in the invalidation of the ultimate administrative determination" if the petitioner can demonstrate "prejudice resulting from the violation." *United States v. Morgan*, 193 F.3d 252, 266–67 (4th Cir. 1999); *Accardi*, 347 U.S. at 268. Prejudice is "presume[d]" however, where "an entire procedural framework, designed to ensure the fair processing of an action affecting an individual is created but then not followed by an agency." *Delgado-Corea v. I.N.S.,* 804 F.2d 261, 263 (4th Cir. 1986). Ramos-Lopez has demonstrated that his removal violated every protection to which he was entitled under 8 C.F.R. § 205.2 and to his great disadvantage, precisely because he cannot claim the benefits of SIJS protection once removed to the very country that his SIJS was designed to avoid.

To assess whether Ramos-Lopez is likely to succeed in his due process claim, the Court balances the three well-known *Mathews* factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. Each factor points to Ramos-Lopez's likely success on the merits.

First, Ramos-Lopez retains an especially significant private interest in maintaining both his SIJS and deferred action status. As explained, Ramos-Lopez is entitled to retain the benefits of SIJS, and remain eligible to adjust to LPR, unless and until he receives fair notice and opportunity to be heard on the propriety of revocation. *See Garcia Lanza v. Noem*, 822 F. Supp. 3d 326, 335 (E.D.N.Y. Mar. 3, 2026). Separately, he has a keen interest in maintaining his deferred action status. Although deferred action is a "regular practice . . . of exercising [prosecutorial] discretion," *AAADC*, 525 U.S. at 484, once conferred, it effectively accords the noncitizen "affirmative immigration relief." *Dep't of Homeland Sec. v. Regents of the Univ. of California,* 591 U.S. 1, 18 (2020) (discussing the Deferred Action for Childhood Arrivals ["DACA"] program). Further, USCIS, and only USCIS, retains discretion to revoke deferred action on a case-by-case basis. *See Immigr. Ctr. for Women & Child.* v. *Noem*, No. 2:25-CV-09848-AB-AS, 2026 WL 1455004, at *40 (C.D. Cal. May 20, 2026) ("*ICWC*") ("Because ICE lacks authority to revoke USCIS grants of deferred action status, ICE cannot de facto revoke that status"). *See also* USCIS Policy Manual, vol. 6, pt. J, ch. 4.G.1 ("If USCIS previously granted deferred action to [a noncitizen] with SIJ classification in the exercise of discretion, the [noncitizen's] deferred action remains valid for the authorized period, *unless terminated by USCIS*, on a case-by-case basis.") (emphasis added).

14

Here, ICE, not USCIS, removed Ramos-Lopez without authority, and no facts demonstrate that he was afforded any particularized consideration. *See ICWC*, 2026 WL 1455004, at *40. This revocation is especially problematic because USCIS awards deferred action to fulfill the congressional purpose of according SIJS recipients the opportunity to apply for LPR status. *Xol-Maas*, 2026 WL 457005, at *2. For this reason, the Court joins the litany of others who conclude that "once someone such as [Ramos-Lopez is] granted deferred action and SIJ status . . . and the ability to seek work authorization, he ha[s] a protected property and liberty interest under the due process clause." *Sarmiento v. Perry*, 1:25-CV-01644-AJT-WBP, 2026 WL 131917, at *8 (E.D. Va. Jan. 19, 2026). *See, e.g.*, *Benitez-Umanzor v. Jackson Par. Corr. Ctr.*, No. CV 26-0940, 2026 WL 948795, at *2 (W.D. La. Apr. 8, 2026) (finding SIJS-deferred action Petitioner was likely to succeed on the merits of his claim because "a noncitizen with deferred action status has a liberty interest protected under the Due Process Clause"); *Blandon v. Maldonado*, No. 2:26-CV-1669 (NJC), 2026 WL 790910, at *7–8 (E.D.N.Y. Mar. 21, 2026) (ordering the release of SIJS-deferred action Petitioner, in part, because Petitioner had a protected liberty interest against detention); *Zamora v. Noem*, No. 8:26CV79, 2026 WL 766087, at *3–4 (D. Neb. Mar. 18, 2026) (same); *Alfaro v. Mullin,* No. 26-0766 (GRB), 2026 WL 734348, at *6 (E.D.N.Y. Mar. 16, 2026) (finding SIJS-deferred action "Petitioner could not lawfully be arrested and detained by ICE, particularly in absence of changed circumstances and without notice or opportunity to be heard"); *Garcia Lanza*, 822 F.Supp.3d at 335–40 (holding that the Court's previous order setting the terms and conditions of Petitioner's release remained in effect, in part, because SIJS-deferred action recipients have a "substantial private interest" in remaining out of custody); *Quinonez Torres v. Hermosillo*, No. 2:26-CV-00076-TLF, 2026 WL 547591, at *8 (W.D. Wash. Feb. 23, 2026) (finding SIJS-deferred action Petitioner had a "strong private interest in freedom from

15

imprisonment"); *Rodriguez Vasquez v. Arnott*, No. 6:26-CV-3101-MDH, 2026 WL 498101, at *2, 4 (W.D. Mo. Feb. 23, 2026) (ordering immediate release of SIJS-deferred action Petitioner, in part, because Petitioner had a protected liberty interest in his freedom); *Gaspar v. Akshar*, No. 9:26-CV-00118 (BKS), 2026 WL 699369, at *8–9 (N.D.N.Y. Feb. 17, 2026) (same); *A.R. v. Noem*, No. 5:25-CV-03565-MEMF-PVC, 2026 WL 194850, at *9 (C.D. Cal. Jan. 26, 2026) (same); *Alfaro Herrera*, 2026 WL 91470, at *11, 14 (same). *See also Medina v. Arnott*, No. 6:26-CV-3170-MDH, 2026 WL 915582, at *5 (W.D. Mo. Apr. 3, 2026) (ordering immediate release of detained DACA recipient); *Juarez v. Noem*, No. 2:26-CV-00801-DC-CKD, 2026 WL 799976, at *9 (E.D. Cal. Mar. 23, 2026) (ordering the return of DACA recipient who was removed from the United States); *Santiago v. Noem*, No. EP-25-CV-361-KC, 2025 WL 2792588, at *14 (W.D. Tex. Oct. 2, 2025) (ordering immediate release of detained DACA recipient ).

As to the second *Mathews* factor, the risk of erroneous deprivation to Ramos-Lopez is high. The Government removed him based on an *in absentia* order that predated the grant of SIJ-deferred action. In doing so, the Government ignored Ramos-Lopez's SIJS-deferred action and gave him zero opportunity to challenge the legality or constitutionality of the revocation of his SIJS or his removal in light of that status. This swift expulsion denied him the robust process-based protection that a SIJS recipient must be given, and ignored the USCIS-conferred deferred action. *See* 8 C.F.R. § 205.2. *See also Sarmiento*, 2026 WL 131917, at *10 (finding that the risk of erroneous deprivations weighed in favor of Petitioner).

Although the Government presses now that its actions were entirely lawful because Ramos-Lopez has a final order of removal, this same order was in place *before* the Government accorded him SIJS-deferred action, and at the time the Government *agreed* that Ramos-Lopez's return to Guatemala would jeopardize his safety "due to the dangerous conditions in Guatemala and the

16

absence of any available financial or emotional support for [him] there." ECF No. 1-3 at 3; 8. C.F.R. § 204.11(b)(5) ("USCIS approval of the petition constitutes the granting of consent."). Had the Government given Ramos-Lopez any procedural protections in advance of his removal, he could have raised this and any other grounds for contesting government conduct that stripped him of his SIJS and deferred action status. Thus, the risk of erroneous deprivation remains high.

As to the third *Mathews* factor, the Government retains no legitimate interest in denying SIJS-deferred action recipients the very protections articulated by law and Executive policy. *See Osorio-Martinez,* 893 F.3d at 163, 171 (citations omitted). Accordingly, absent changed circumstances—of which there are none—the Government cannot now claim a legitimate interest in summarily removing Ramos-Lopez when doing so would arbitrarily deny him the very protections he was granted not three years ago. *Id.* at 171 (citing 8 U.S.C. § 1155; 8 C.F.R. § 205.2; USCIS Policy Manual, vol. 7, pt. F, ch. 7.C.2).

Thus, Ramos-Lopez is likely to succeed on the merits of Counts II and III. The Court turns to the remaining *Winter* factors.

**B.      Irreparable Harm**

To demonstrate irreparable harm, Ramos-Lopez must make a "'clear showing' that [he] will suffer harm that is 'neither remote nor speculative, but actual and imminent.'" *Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, No. 25-1411, 2025 WL 1249608, at *62 (4th Cir. Apr. 30, 2025) (quoting *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 216 (4th Cir. 2019)). The harm must be more than a mere possibility, and it must not be harm that can be remedied through money damages. *Id.* Plainly, he makes this showing.

By removing him from the United States, the Government effectively stripped Ramos-Lopez of SIJS and deferred action. *See* 8 U.S.C. § 1101(a)(27)(J) (defining SIJS recipient as "an immigrant who is present in the United States"). He can neither maintain his status, nor can he adjust to LPR because he is no longer in the United States. Thus, absent the requested injunctive relief, Ramos-Lopez will forever lose those very protections. *See Joshua M.,* 439 F. Supp. 3d at 674–75 (concluding that SIJS can only be preserved if petitioner remains in the United States). This is classic irreparable harm, and it counsels strongly in favor of granting the motion.

## C.    Balance of Equities and Public Interest

Taking the last two *Winter* factors together, *Nken*, 556 U.S. at 435, "'[t]here is generally no public interest in the perpetuation of unlawful agency action.'" *Am. Fed'n of State, Cnty. & Mun. Emps.*, 2025 WL 1249608, at \*63 (King, J., concurring) (quoting *Louisiana v. Biden*, 55 F.4th 1017, 1035 (5th Cir. 2022)). This is so because "'the public undoubtedly has an interest in seeing its governmental institutions follow the law. . . .'" *Id.* (quoting *Roe v. Dep't of Defense*, 947 F.3d 207, 230–31 (4th Cir. 2020)). Given that the Government's violations are plain, Ramos-Lopez has satisfied this factor.

As to competing equities, on one side of the ledger, Ramos-Lopez is now deprived of the statutory protection aimed at giving shelter to "abused, neglected or abandoned children" who are otherwise inadmissible and vulnerable. *Osorio-Martinez*, 893 F.3d at 163. Not only has the Government stripped him of such protections without process, but it also returned him to the very country from which he fled abuse, without any notice, opportunity to be heard, or chance to apply for permanent residency as Congress accorded him. Clearly, restoration to the *status quo ante* would fulfill the Congressional mandate of SIJS protection. On the other side of the ledger, the Government will hardly suffer if made to follow the law.

Because Ramos-Lopez has demonstrated with preponderant evidence all four *Winter* factors, the Court grants the motion for injunctive relief.

## VII.   Scope of Relief Ordered

In granting the requested relief, the Court is mindful to order only that which will restore Ramos-Lopez to his lawful status immediately before the last uncontested Government action.   To accomplish this, however, the Court must order that the Government facilitate Ramos-Lopez's expeditious return; that is, to "take the steps available to [the government] toward aiding, assisting, or making [his return to the United States] easier." *Abrego Garcia v. Noem*, 348 F.R.D. 589, 592 (D. Md. 2025).   The Government is reminded that "facilitate" is "an active verb" and "requires that steps be taken to achieve the relief ordered." *Abrego Garcia v. Noem*, No. 25-1404, 2025 WL 1135112, at *1 (4th Cir. Apr. 17, 2025).   *See also J.O.P. v. United States Dep't of Homeland Sec.,* No. 25-1519, 2025 WL 1431263, at *5–6 (4th Cir. May 19, 2025).

Additionally, restoration of the *status quo ante* entails, at least initially, that Ramos-Lopez be released on the same conditions that immediately preceded his summary removal.   Further, because Ramos-Lopez currently enjoys both SIJS and deferred action through 2027, the Court cannot see how his re-removal, without more, is reasonably foreseeable.   *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001).   And if his removal is not reasonably foreseeable, then the Government lacks valid grounds to detain him, as after all, the sole lawful purpose of post-order immigration detention is to effectuate lawful removal.   *Id*. at 699.   Absent that, Ramos-Lopez must remain released.   *Cf. Juarez*, 2026 WL 799976, at *9 (ordering the return of DACA recipient who was removed without having DACA revoked); *Zamora*, 2026 WL 766087, at *4 (concluding that because of petitioner's SIJS-deferred action, the Government has "no basis" to detain Petitioner to begin removal proceedings); *Xol-Maas*, 2026 WL 457005, at *8 (ordering immediate release of

SIJ-deferred action recipient because execution of a removal order [without anything more] would "summarily strip[]" the recipient of SIJS and deferred action) (quoting *Osorio-Martinez*, 893 F.3d at 179); *Sarmiento,* 2026 WL 131917, at *10 (finding that "immediate release" from pre-removal detention "is the appropriate remedy" for SIJ-deferred action recipient "to cure the due process violation and restore the status quo."); *F.R.P. v. Wamsley*, No. 3:25-CV-01917-AN, 2025 WL 3037858, at *7 (D. Or. Oct. 30, 2025) ("immediate release is required to restore the status quo, meaning the last uncontested status which preceded the pending controversy.") (citation omitted); *Maldonado v. Cabezas*, No. 25-13004, 2025 WL 2985256, at *7 (D.N.J. Oct. 23, 2025) (immediate release of SIJ recipient ordered).

Last, within 14 days from the date of this Opinion and Order, the Government shall submit a status report, accompanied by a sworn declaration of a person with firsthand knowledge, detailing what steps the Government has taken, and what steps it will take, to facilitate Ramos-Lopez's return to the United States.

A separate order follows.

Date: June 17, 2026

/s/
_____
Paula Xinis
United States District Judge

20